TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-12-00177-CV






Danette Marilou Pappas, Appellant


v.


William Michael Pappas, Appellee






FROM THE DISTRICT COURT OF BELL COUNTY, 169TH JUDICIAL DISTRICT

NO. 236,404-C, HONORABLE GORDON G. ADAMS, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N


 Danette Marilou Pappas and William Michael Pappas filed a petition and
counter-petition for divorce. Following a bench trial, the trial court granted the divorce and divided
the couple's property and debts. In five issues on appeal, Danette (1) challenges the trial court's
division of property. We will reverse the judgment and remand the cause to the trial court for a new
division of the marital estate.


BACKGROUND

 Danette and Michael were married on July 24, 1992. No children were born during
the marriage. On May 27, 2009, Danette filed for divorce. Shortly thereafter, Michael filed a
counter-petition for divorce. Both parties requested an equal division of the community estate. After
a bench trial, the trial court granted the parties' petitions for divorce, awarded Danette real and
personal property valued at $596,665.95, and awarded Michael real and personal property valued
at $603,829.66. On appeal, Danette asserts that the trial court made several errors in valuing the
property in the marital estate, which she says resulted in a division of the estate that is so
disproportionate as to be manifestly unjust. She contends the trial court abused its discretion by
(1) declining to recognize a community-property claim for economic contribution related to a
rental-storage business known as "Northwest Hills," which Michael owned and operated in a
partnership with his father, (2) disregarding expert testimony concerning the value of the community
interest in Northwest Hills, (3) failing to dispose of a community interest in the real property on
which Michael co-owned and operated a business known as "Best Way Carpet," (4) failing to
dispose of community funds Michael earned after divorce proceedings were initiated, and (5) finding
that she wasted community assets.


STANDARD OF REVIEW

 A trial court has broad discretion in dividing the marital estate, and we presume the
trial court exercised its discretion properly. Murff v. Murff, 615 S.W.2d 696, 698-99 (Tex. 1981).
In dividing the community estate, the trial court must order a division of the property that it deems
just and right, having due regard for the rights of each party. Tex. Fam. Code Ann. § 7.001 (West
2006). The division of the community estate need not be equal, but it should be equitable. 
O'Carolan v. Hopper, 71 S.W.3d 529, 532 (Tex. App.--Austin 2002, no pet.). Trial courts have
broad discretion and are permitted to consider a variety of factors in making a just and right division
of property. Murff, 615 S.W.2d at 698-99; see also Schlueter v. Schlueter, 975 S.W.2d 584, 589
(Tex. 1998). An appellate court will correct the trial court's division of marital property only
when a clear abuse of discretion has been established. Murff, 615 S.W.2d at 698; Bell v. Bell,
513 S.W.2d 20, 22 (Tex. 1974). A clear abuse of discretion is shown if the division of property is
manifestly unjust. See Mann v. Mann, 607 S.W.2d 243, 245 (Tex. 1980). "The party attacking the
property division bears the heavy burden of showing that the trial court's property division was not
just and right." Pletcher v. Goetz, 9 S.W.3d 442, 445 (Tex. App.--Fort Worth 1999, pet. denied).

 Under an abuse-of-discretion standard in a family-law case, legal and factual
insufficiency are not independent grounds for reversal but are instead relevant factors in assessing
whether the trial court abused its discretion. Doyle v. Doyle, 955 S.W.2d 478, 479 (Tex.
App.--Austin 1997, no pet.). To determine whether the trial court abused its discretion due to
legally or factually insufficient evidence to support its decision, we engage in a two-pronged inquiry,
considering (1) whether the trial court had sufficient evidence on which to exercise its discretion,
and (2) whether it erred in its application of that discretion. Zeifman v. Michels, 212 S.W.3d 582,
587 (Tex. App.--Austin 2006, pet. denied). Under the first prong, we apply the traditional
evidence-sufficiency standards and then proceed to determine whether, under the second prong, the
trial court's decision was arbitrary or unreasonable. Id. Errors in valuation require reversal only
when the errors make the property division so disproportionate as to constitute an abuse of
discretion. See Grossnickle v. Grossnickle, 935 S.W.2d 830, 851 (Tex. App.--Texarkana 1996, writ
denied). If there is reversible error that materially affects the trial court's "just and right" division
of property, we must remand the entire community estate for a new division of property. Jacobs
v. Jacobs, 687 S.W.2d 731, 733 (Tex. 1985).

 In this case, the trial court acted as the fact-finder and is, therefore, the sole judge of
the witnesses' credibility. See Murff, 615 S.W.2d at 700. As such, the court was free to consider
all the facts and circumstances in connection with the testimony of each witness and accept or reject
all or part of that testimony, and we may not substitute our judgment for the trial court's assessment
of the witnesses' testimony. See In re W.E.R., 669 S.W.2d 716, 716-17 (Tex. 1984).


DISCUSSION

 Danette requested an equal division of the marital estate, and the trial court awarded
her 49.7% of the estate, as valued by the court. On appeal, Danette contends that the trial court
dramatically undervalued the estate due to several errors and omissions. Broadly stated, the issues
on appeal pertain to valuation of claims related to real property used by the Northwest Hills storage
business (appellate issues one and two), disposition of real property on which Best Way Carpet
operated its business (appellate issue three), and disposition of the funds in each party's possession
after divorce proceedings were initiated (appellate issues three and four). She contends the
cumulative effect of the trial court's errors resulted in a division of the marital estate that was not
just and right (appellate issue five). We will address these issues in turn.


Northwest Hills Storage Business

 Northwest Hills is a rental-storage business that operates on several lots in three
different blocks of the Milestone Planned Development--Blocks 1, 7, and 8--which were acquired
and improved at different times over an extended period of years, both before and during the
marriage. In the proceedings below, the parties did not dispute that Michael's interest in the
Northwest Hills partnership began before he married Danette and was formalized in a written
partnership agreement executed shortly before the marriage, but they did dispute the extent of
Michael's ownership interest in the business. (2) They also disputed whether some of the real property
used in the business should be characterized as partnership property, separate property, or
community property. Chronologically, Michael obtained an interest in the lots in the following
order, Block 8, Block 1, and Block 7. With respect to Block 8, Danette does not dispute the trial
court's finding that it is Michael's separate property, but she asserts that the court erred in denying
her economic-contribution claim on behalf of the community with regard to improvements made to
that property after the marriage. With respect to Blocks 1 and 7, she contends the trial court
significantly undervalued the community's interest.


 Block 8:

 In her first issue, Danette asserts that the trial court erred in denying her
economic-contribution claim regarding post-marriage improvements to Block 8. The lots in
Block 8 were purchased in 1989 by Michael and his father. Block 8 has six buildings--A, B, C, D,
E, and F--that were built with funds Michael and his father borrowed from a third-party lender prior
to Michael and Danette's marriage. Construction on one of the buildings was completed before they
married, but the remaining units were completed after marriage. The foregoing facts are undisputed. 
There is also some evidence that Michael and his father either took out additional construction loans
or extended the existing loans after the marriage, but it is undisputed that all of the construction
loans were discharged by the partnership after the marriage with rental proceeds that were retained
by the partnership.

 In the proceedings below, Michael testified that he contributed his share of Block 8
to the Northwest Hills partnership, in which he claims a separate-property ownership interest based
on its formation prior to the marriage. Danette asserted that Block 8 is not partnership property but
rather is Michael's separate property because it was purchased in his name rather than the
partnership's name. The trial court found, and Danette acknowledges, that the lots in Block 8 are
Michael's separate property. Danette contends, however, that the community estate has a mandatory
economic-contribution claim in the amount of $330,547 because the construction loans were
discharged during the marriage. Danette maintains that the construction loans were personal loans
rather than loans to the partnership because they were taken in the names of Michael and his father. 
Consequently, she asserts, any payments on the loans by the partnership were effectively
distributions of partnership profits, which would be community income. See, e.g., Lifshutz
v. Lifshutz, 199 S.W.3d 9, 27 (Tex. App.--San Antonio 2006, pet. denied) ("[S]ince partnership
property does not retain a separate character, distributions from the partnership are considered
community property, regardless of whether the distribution is of income or of an asset.").

 The trial court neither required Michael's separate estate to repay a claim for
economic contribution nor expressly included an economic-contribution claim in the marital estate. 
Instead, the court found that "[Danette's] claims for reimbursement and economic contribution are
not supported by credible evidence; in any event, those claims are resolved as a part of the Court's
just and right division of the community estate." On appeal, Danette contends that the evidence
establishes all of the essential elements of the statutory economic-contribution formula and that the
trial court was required to recognize the economic-contribution claim as a community asset subject
to just and right division. In Michael's view, the trial court properly declined to recognize
an economic-contribution claim on behalf of the community estate because (1) Danette's
expert admitted that he did not have all the information needed to properly calculate an
economic-contribution claim under the applicable law; (2) there is sufficient evidence that the debt
was extinguished by partnership property--income from rental units retained for the present or
reasonably anticipated needs of the business--rather than community property; and (3) any
economic-contribution claim would be offset by the trial court's finding that Danette wasted
community assets. Alternatively, Michael contends that Danette was compensated for any
economic-contribution claim by the trial court's order that Michael pay her $158,807.89, which he
says is slightly less than half of the economic-contribution claim Danette alleged on behalf of the
community. We hold that the trial court did not abuse its discretion in declining to recognize an
economic-contribution claim on behalf of the community because the trial court could reasonably
have determined that Danette's expert failed to provide credible evidence of an essential component
of the statutory economic-contribution formula. (3)

 The law applicable at the time the parties filed their divorce petitions provided that
"[a] marital estate that makes an economic contribution to property owned by another marital
estate has a claim for economic contribution [against] the benefitted estate." Act of May 28, 2003,
78th Leg., R.S., ch. 230, § 1, 2003 Tex. Gen. Laws 1056, 1056, repealed by Act of May 19, 2009,
81st Leg., R.S., ch. 768, § 11(3), 2009 Tex. Gen. Laws 1950, 1953 (former family code section
3.403). The law also provided that, in a divorce decree, "the court shall determine the rights of both
spouses in a claim for economic contribution . . . and in a manner that the court considers just and
right having due regard for the rights of each party and any children of the marriage shall . . . order
a division of a claim for economic contribution of the community marital estate to the separate
marital estate of one of the spouses . . . ." Act of May 18, 2001, 77th Leg., R.S., ch. 838, § 5,
2001 Tex. Gen. Laws 1679, 1683-84, amended by Act of May 29, 2009, 81st Leg., R.S., ch. 768, § 7,
2009 Tex. Gen. Laws 1950, 1952 (former family code section 7.007). (4)

 Former section 3.403 of the family code provides a mandatory formula for
determining the amount of an economic-contribution claim in favor of one marital estate against
another. Applying the formula provided in former section 3.403, the amount of the community's
economic-contribution claim would be equal to the product of the equity in Michael's separate
property on the date of divorce ("Equity 2") multiplied by a fraction in which the numerator is the
economic contribution to Michael's separate property by the community estate ("Community
Contributions") and the denominator is an amount equal to the sum of the Community Contributions,
the equity in Michael's separate property as of the date of the first contribution by the community
estate ("Equity 1"), and any additional economic contribution by the husband's separate estate after
the community's first contribution to the estate ("Separate Estate Contribution"). See Act of May
28, 2003, 78th Leg., R.S., ch. 230, § 1, 2003 Tex. Gen. Laws 1056, 1056 (repealed 2009) (former
Family Code section 3.403(b), (b-1)(2)). This is mathematically represented as: Economic
Contribution = Equity 2 x (Community Contributions/(Community Contributions + Equity 1
+ Separate Property Contribution)). See id. A spouse seeking economic contribution must bring
forth sufficient evidence for the fact-finder to determine the enhancement value to the benefitted
estate under this formula. Hailey v. Hailey, 176 S.W.3d 374, 388 (Tex. App.--Houston [1st Dist.]
2004, no pet.).

 The trial court's findings of fact and conclusions of law do not specify the particular
deficiency in Danette's evidence, but her burden on appeal is to establish the economic-contribution
claim as a matter of law or to point to evidence that significantly preponderates against the trial
court's contrary conclusion. We conclude that Danette has not met this heavy burden because the
trial court could have concluded that, even assuming that economic contributions were made by the
community estate, there was insufficient evidence to determine the equity in Michael's separate
property as of the date of the first contribution by the community estate--the Equity 1 component
of the statutory formula. Danette's expert testified that he did not know how much equity Michael
had in Block 8 at the time the community estate made its first contribution (i.e., making payment on
the construction loans). He further testified, however, that it was reasonable to conclude that
Michael's equity at that time was the same as it was when he purchased the property--essentially,
the $12,076 down-payment--because it was reasonable to conclude that the property had not
increased in value during the nearly three years between the time Michael and his father purchased
the property and the time the community made its first payment on the construction loans. The sole
basis for the expert's conclusion that the property had not increased in value was that property
valuations are often determined using comparable sales within a three-year period.

 We hold that the trial court could reasonably have disregarded the expert's opinion
as not credible. As the trier of fact, it was within the trial court's province to do so. See City of
Keller v. Wilson, 168 S.W.3d 802, 819-20 (Tex. 2005) (observing that fact-finder is sole judge of
witnesses' credibility and weight to give to their testimony and may choose to believe one witness
and disbelieve another, including uncontroverted expert testimony unless expert testimony is
required). In this case, the trial court could reasonably have determined that the value of Michael's
equity in the property nearly three years earlier was not a sufficient proxy for the Equity 1 component
of the statutory formula, contrary to the expert witness's opinion. In addition to the fact-finder's
general prerogative in evaluating the credibility of witnesses, there are several reasons why the trial
court could have so concluded: (1) the fair market value of the property three years earlier was too
remote to be a credible proxy for the fair market value of the property at the time of the community's
first contribution, (2) the expert provided no market information to justify his conclusion that the
property had not likely increased in value, (3) the expert failed to address the likelihood of an
increase in equity through reductions in the amount of the purchase lien during the three-year period,
even though the note was due to be paid off shortly after Michael and Danette married, (5) and (4) the
expert failed to consider Michael's equity in the value of improvements constructed prior to the
marriage. See Act of May 18, 2001, 77th Leg., ch. 838, § 2, 2001 Tex. Gen. Laws 1679, 1680,
repealed by Act of May 19, 2009, 81st Leg., R.S., ch. 768, §11(2), 2009 Tex. Gen. Laws 1950, 1953
(former family code section 3.401) ("'Equity' means . . . the amount computed by subtracting from
the fair market value of the property as of a specific date the amount of a lawful lien specific to the
property on that same date."); see also Garner, Bryan A., A Dictionary of Modern Legal Usage at
322 (2d ed. 1995) (defining "equity" as "[t]he amount by which the value of a property or an interest
in property exceeds secured claims or liens . . . 'the value, above all secured claims against the
property, that can be realized from the sale of the property for the benefit of the unsecured
creditors.'"). Accordingly, we hold that the court did not abuse its discretion in declining to
recognize an economic-contribution claim in favor of the community estate. We overrule Danette's
first appellate issue.


 Blocks 1 and 7

 In her second issue, Danette asserts that the trial court significantly undervalued the
community's interest in Blocks 1 and 7. The principal issues at trial concerning Blocks 1 and 7 were
(1) whether the lots in these blocks were community property or partnership property, (2) the extent
of Michael's ownership interest in the partnership, and (3) the value of the property and the business.

 The lots in Block 1 were purchased in 1998, and the deed identifies the purchasers
as Michael, Danette, and Michael's parents. Block 1 has three buildings--G, H, and I--that were
constructed using funds borrowed by Michael, Danette, and Michael's parents. Michael's father
provided uncontroverted testimony that (1) the lots in Block 1 were acquired for use by the
partnership, (2) the funds to purchase the property came from storage-unit rental income retained by
the partnership, (3) the construction loans were paid by the partnership from retained rental income,
and (4) the property was used by the partnership exclusively and treated as partnership property on
tax returns.

 Michael's father purchased the lots in Block 7 several years before he formed the
partnership with Michael. There are two buildings on that property--buildings 415 and 515--which
existed when Michael's father purchased the property. In 2003 Michael purchased a 49% interest
in this property with a $150,000 seller-financed note payable to his father. Each month, the
partnership distributed $1,500 to Michael, and Michael used this distribution to pay down the note
to his father. At the time of trial, there was approximately $58,000 remaining unpaid on the note. 
The foregoing facts are undisputed. Michael and his father testified that Michael purchased an
interest in Block 7 in order to bring it into the partnership. Michael's father testified that, prior to
that time, he had kept two sets of accounting books--one for the Northwest Hills partnership and
one for the rental units in buildings 415 and 515, which he alone owned. When it became difficult
for him to operate the businesses separately, he suggested that Michael buy into Block 7 so they
could consolidate the accounting books.

 Michael's expert valued Northwest Hills--including all the lots in Blocks 1, 7, and
8--at $2.22 million using the income-capitalization approach; however, he did not allocate value
to the business by building or by block. Danette's expert, also using the income-capitalization
method, valued Northwest Hills--including all the lots in Blocks 1, 7, and 8--at $2.23 million and
assigned values of $1,134,989 to the buildings in Block 1, $411,357 to the buildings in Block 7, and
$683,654 to the buildings in Block 8.

 Using a cost approach to valuation, both Michael's and Danette's experts valued the
business as follows:


 Building G (Block 1) $363,850

 Buildings H & I (Block 1) $483,700

 Building 415 (Block 7) $162,200

 Building 515 (Block 7) $145,000

 Buildings A-F (Block 8) $510,550

 Misc. Improvements (6) $125,000

 
Land (152,547 sq. ft.) $122,000

 TOTAL VALUE: $1,912,300


The only difference between the experts' valuations of the property under the cost approach was how
to allocate the cost of miscellaneous improvements and land. Michael's expert provided no
allocation, but Danette's expert said that both components of value should be allocated among the
buildings based on their value. Essentially, the experts agreed on the overall value of the business
and the component elements of valuation under both the income-capitalization and cost approaches
to valuation.

 The principal dispute between the experts centered on the applicability and extent of
discounts to be applied to Michael's interest in the business. The main issue was whether Michael
in fact holds an interest in Northwest Hills that is properly characterized as "non-controlling." Both
Michael and his father testified that Michael holds only a 49% ownership interest in Northwest Hills. 
Partnership and individual tax returns and other documents admitted at trial confirm this division,
as did the transaction involving Michael's purchase of a 49% interest in Block 7. However, the
written partnership agreement, which was executed in May 1992, states that the partnership is owned
equally by Michael and his father. Danette's expert testified that the value of the partnership should
not be discounted because Michael and his father hold equal ownership interests. He stated that an
equal, undivided ownership interest requires no adjustment or discount while a majority interest
carries a premium value and a minority interest has a reduced value due to lack of control. (7) 
Michael's expert disagreed, testifying that the value of Michael's share in Northwest Hills must
be reduced by 40% to reflect lack of marketability/liquidity regardless of whether Michael has a
49% undivided interest or is an equal owner. He stated that, in either case, a 40% deduction for lack
of marketability/liquidity would be appropriate because a 50% ownership interest is still properly
characterized as a non-controlling interest and is less marketable. He further testified, however, that
if the partnership interest was only 49%, an additional deduction of 20% for lack of control would
apply. A real estate appraiser also testified at trial on Michael's behalf regarding the value of the real
property used by Northwest Hills and Best Way Carpet. He testified generally that the industry-wide
standard is to reduce the value of an undivided interest in real property by one-third because "[i]t's
more difficult to sell a piece of property when there is an undivided interest, trying to get two people
to agree on the sales agreement."

 In the final divorce decree, the court awarded Michael "[t]he business known as
Northwest Hills, including all community interest, including but not limited to all interest in the lots
in Block 1 . . . and in the lots in Block 7 and 8 . . . ." Before rendering final judgment, the court
issued a memorandum ruling declaring Michael's interest in Block 8 to be his separate property and
his interest in Northwest Hills, including Blocks 1 and 7, to be community property. (8) In amended
findings of fact and conclusions of law, the trial court reiterated that the lots in Block 8 were
Michael's separate property and determined that the value of the community portion of the
Northwest Hills storage business and real estate, including Blocks 1 and 7, totaled $82,125. (9) To the
extent the trial court concluded that the property used in the storage business was either community
or separate property, the court implicitly determined that it was not partnership property, because
partnership property is neither community property nor separate property in nature. See Lifshutz,
199 S.W.3d at 27 ("Under the entity theory [of partnership], all property brought into the partnership
is partnership property and, as partnership property, does not retain either a community or separate
property nature [for purposes of community property principles relating to marriage]."). But with
respect to the trial court's disposition of the lots in Blocks 1 and 7, the trial court appears to have
found (somewhat incongruously) that these lots were partnership property and that Michael's interest
in the storage business, including these assets, was community property. The trial court made
no express fact findings resolving the disputes about Michael's ownership percentage or the
applicable discounts, but the court's valuation of the community's interest in Northwest Hills is
consistent with an application of a non-controlling interest discount and with a finding that Michael
owned a 49% interest in the partnership.

 On appeal, Danette contends the evidence establishes that Northwest Hills is valued
at a minimum of $2.22 million under the income-capitalization approach and that the trial court erred
in applying non-controlling interest discounts because Michael owns 50% of the business per the
partnership agreement. Accordingly, she contends that the community's interest in Northwest Hills
is $1.11 million. Alternatively, if discounts are applied, she contends that the uncontroverted
evidence establishes a minimum value of $521,909 for the business.

 Danette's claim that the "uncontroverted" evidence establishes a minimum value of
$2.2 million for the storage business is flawed because she includes in that figure value calculations
that her expert conceded were attributable only to the buildings on Block 8, which she does not
dispute are Michael's separate property. Excluding the value attributable to Block 8 leaves a
maximum value of $1,546,346 for the business under the income-capitalization approach and
$1,401,750 under the cost approach (if land and miscellaneous improvements are not allocated by
building value). Although Danette's appellate argument implies that only the income-capitalization
approach should be considered, the court was free to consider both methods in determining the value
of the property in the marital estate because both of these methods were presented in the expert
reports admitted at trial. Aside from Danette's faulty premise regarding the minimum value of the
business, we agree that the trial court significantly undervalued the community's interest in
Northwest Hills because there does not appear to be any value attributable to the community's
interest in Block 1 even though the divorce decree indicates that there is at least some portion of
Block 1 that was acquired by the parties (or the partnership) during the marriage.

 Although the trial court did not explain its methodology in valuing "the business
known as Northwest Hills," "including all of the community interest in the lots in Block 1 . . . and
the lots in Block 7," the $82,125 value the trial court assigned to the business is identical to the
valuation proposed in Michael's written final argument as the community's contribution to the
partnership. The figure Michael proposed, which the trial court apparently adopted, was based on
an ownership interest of 49% and a non-controlling interest discount of 33% (based on the real estate
appraiser's testimony regarding reductions in value for undivided interests). According to Michael,
Blocks 1, 7, and 8 are partnership property and his interest in the partnership is his separate property,
having its inception no later than execution of the partnership agreement in May 1992. In his view,
therefore, the only community-property interest in Northwest Hills is the 49% interest in the lots in
Block 7, which Michael purchased after marriage, paid for with profits distributed to him by the
partnership, and contributed to the Northwest Hills partnership. Accordingly, Michael contends that
the community has an interest only in the buildings on the lots in Block 7--buildings 415 and
515--and the accompanying land. Per the appraisals admitted at trial, which were not contested,
buildings 415 and 515 were valued at $162,200 and $145,000, respectively, using the "appraisal cost
approach" for a total of $307,200. The land in Blocks 1, 7, and 8 was separately valued at a total of
$122,000, which was not segregated among the tracts of land; consequently, Michael conceded that
the entire value of the land must be considered to be part of the community's contribution of
Block 7 to the partnership. Based on these values, which were not contested by Danette or her
expert, Michael valued the community interest at $82,125 by adding the building and land value
($307,000 (10) + $122,000 = $429,000), reducing that figure by his 49% ownership interest, applying
an additional non-controlling interest discount of 33.3%, and then deducting the outstanding balance
of $58,000 on the note to Michael's father. This is exactly the amount that the trial court found to
be the value of the entire community-property interest in the Northwest Hills partnership.

 There was conflicting evidence about whether Michael holds an equal ownership
interest in Northwest Hills or a 49% ownership interest, and there was conflicting expert testimony
about whether discounts should be applied to Northwest Hill's value if Michael holds an equal
ownership interest. As a reviewing court, we give deference to the responsibility of the fact-finder
to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences
from basic facts to ultimate facts. See McGalliard v. Kuhlmann, 722 S.W.2d 694, 697 (Tex. 1986). 
Based on the evidence at trial, the trial court could reasonably have determined these issues in
Michael's favor and valued the business accordingly. Even so, however, there were errors in the trial
court's valuation of the business that so significantly undervalued the community's interest in
Northwest Hills--as awarded by the court--that a new division of the marital estate is required.

 One error is the failure to attribute any value to the $125,000 in miscellaneous
improvements that the experts included in the cost approach to valuation, which the trial court
evidently used to value the community's interest in Northwest Hills. The more significant error is
the court's failure to assign any value to Block 1, which is contrary to undisputed evidence that a
significant portion of the storage business's value is attributable to the buildings on the lots in that
block, regardless of whether the court valued the property under the income-capitalization method
or the cost approach to valuation. The failure to assign any value to Block 1 could make sense only
if the court determined either that the lots in Block 1 are Michael's separate property or that his
interest in the storage business is. But if the trial court intended to treat either Block 1 or the
partnership as Michael's separate property and value Block 7 as the only community contribution
to the partnership, such intention is not evident from the final divorce decree or the trial court's
findings and conclusions. Indeed, some of the court's findings and conclusions are inconsistent with
such an intention.

 In its findings and conclusions, the trial court identified the storage business as
community property and awarded it to Michael. The trial court further identified Blocks 1 and 7 as
assets of the storage business that were acquired during the marriage. Yet the value the trial court
assigned to the storage business can only be traced to evidence related to the value of Block 7, as
analyzed by Michael in his closing argument. Because there was undisputed evidence of some value
attributable to Block 1, the trial court's valuation of Northwest Hills simply cannot be squared with
the evidence. And because the experts testified that Block 1 added several hundred thousand dollars
to the value of Northwest Hills (even if discounts are applied), the trial court's failure to assign some
value to this property resulted in a property division so disproportionate as to constitute an abuse of
discretion and requires that we remand the cause to the trial court for a new just and right division
of the community estate. See Grossnickle, 935 S.W.2d at 851. We therefore sustain Danette's
second appellate issue.

Best Way Carpet

 In the first part of her third issue, Danette asserts that the trial court abused its
discretion by not valuing and disposing of the community's interest in two lots upon which Best Way
Carpet operated. Michael formed a partnership in Best Way Carpet with his friend, Bret Stafford,
while he was married to Danette. It is undisputed that Michael's interest in Best Way Carpet is
community property and that he holds an equal ownership interest, although there is some evidence
that the partnership operated with Stafford as the final decision-maker. In 1995 Michael and Stafford
purchased Lots 7, 8, and 9 in Block Number 1 of Northwest Hills Commercial Subdivision (not to
be confused with the Northwest Hills storage business, which operates on lots in the Milestone
Planned Development). The carpet business presently operates in an improved structure on Lots
8 and 9; Lot 7 was sold during the marriage and is not at issue in the divorce proceedings. In
1999 Michael and Stafford also purchased Lot 4 in the Milestone Planned Development Number
One. Lot 4 is used by Best Way Carpet for storage of inventory.

 The trial court valued Lot 4 at $27,600 and awarded it to Michael. Danette does not
dispute this disposition. The trial court also awarded Michael the following interest in Best Way
Carpet, which it valued at $336,519:


 [a]n undivided one-half interest in the business known as Best Way Carpets [sic],
including all ownership interest in Best Way Carpet Services, Ltd. and Best Way
Carpet Management, LLC, including but not limited to all furniture, fixtures,
machinery, equipment, inventory, cash, receivables, accounts, goods and supplies;
all personal property used in connection with the operation of the business; and all
rights and privileges past, present, or future, arising out of or in connection with the
operation of the business.


The value the court assigned to Michael's interest in Best Way Carpet is equivalent to the value
provided by Michael's expert witness and reflects a 30% discount for lack of marketability/liquidity,
a 25% discount for lack of control, and a 49.5% ownership interest. Danette does not dispute the
trial court's valuation of Best Way Carpet or the application of these discounts. Rather, Danette
argues that the trial court failed to dispose of the community's 50% interest in Lots 8 and 9. Danette
requested additional findings of fact and conclusions of law regarding the value of Lots 8 and 9, but
the trial court did not make any additional findings or conclusions related to this property. There is
no dispute, however, that the lots are worth $434,000 before any deductions are applied; the only
issue is whether the trial court disposed of this property in the final divorce decree.

 The trial court did not specifically mention Lots 8 and 9 in the final divorce decree
or in its amended findings of fact or conclusions of law. The court also did not mention real
property, buildings, or land in valuing and awarding Best Way Carpet. However, by adopting the
valuation of the business proposed by Michael's expert, the trial court appears to have recognized
the value of these lots as a major component of the business's value and, therefore, valued and
disposed of this property in its award to Michael of an undivided one-half interest in Best
Way Carpet.

 Michael's expert valued Best Way Carpet at $1,294,926 before adjustments and
discounts were applied. In determining the business's value, the expert used an "income-oriented"
approach, which "assumes that all of the assets, tangible or intangible, are indistinguishable parts of
the business, and does not attempt to separate the values of the two." Best Way Carpet's adjusted
balance summary sheets, which were included in the expert's report, included a fixed asset value of
$1,171,979 for calendar year 2010, which included "property, plant, & equipment" valued at
$1,155,521 and "land" valued at $16,458. Although there is no listing of the assets used to generate
these values, there was testimony at trial that Best Way Carpet operates in a building constructed on
Lots 8 and 9, and the income statement attached to the expert's report valuing the business shows
no expense for rent, which is consistent with the business owning the property on which it operates. 
Taking the foregoing evidence together, it is reasonable to conclude that the trial court accounted for
the value of Lots 8 and 9 when it valued Best Way Carpet using the income-asset approach and that
the lots were therefore disposed of when Michael's interest in the business was awarded to him at
the stated value. (11)

 However, Danette's concern regarding the disposition of Lots 8 and 9 is
understandable because there is an incongruity in the way the trial court apparently valued and
disposed of Lots 8 and 9 in the final divorce decree and the way Lot 4 was treated in the final divorce
decree. Lot 4 was valued and awarded separately from the business even though it was acquired in
a manner similar to Lots 8 and 9 and there was testimony that it was used by the partnership for
storage. Although there is no apparent reason why these lots should have been disposed of in a
different manner, the trial court did dispose of them. Accordingly, we overrule Danette's third
appellate issue complaining about the disposition of Lots 8 and 9. However, because we must
remand the entire community estate for a new division of property based on the trial court's error in
valuing the community's interest in the Northwest Hills storage business, Jacobs v. Jacobs,
687 S.W.2d 731, 733 (Tex. 1985), the trial court will have the opportunity to revisit its valuation and
disposition of Lots 4, 8, and 9. (12)


Disposition of Post-Filing Income

 The trial court concluded that Danette wasted $298,495 in community assets that were
in her possession after she initiated divorce proceedings. In her fourth issue on appeal, Danette
contends there is no evidence that she disposed of community assets for non-community purposes. 
Danette maintains that she adequately accounted for her expenses, which included $11,500 in
medical bills from a car accident, $57,500 in attorneys' fees, unspecified travel fees and hotel
expenses related to the divorce proceedings, and living expenses, including rent of between $2,500
and $3,400 per month.

 We need not decide at this time whether the trial court's waste finding was erroneous
because, even if it was, Danette was not harmed by the finding. The parties asked for an equal
division of property, and the trial court awarded Danette 49.7% of the estate as valued by the court. 
There is nothing in the final divorce decree, the findings of fact and conclusions of law, or the trial
court's division of assets indicating that Danette was penalized in the division of assets based on the
waste finding. (13)

 In the second part of her third issue, Danette complains that the trial court failed to
make requested fact findings regarding the amount and disposition of money Michael had in his
possession after divorce proceedings were initiated and, consequently, that the court failed to dispose
of community funds Michael earned after she filed for divorce. At trial, Danette focused more on
the period before she filed, arguing that Michael had earned, but failed to account for, more than
$1.2 million dollars in 2006, 2007, 2008, and the portion of 2009 that preceded the divorce
proceedings. On appeal, she focuses on testimony that, in the twenty months between the filing of
divorce in May 2009 and trial, Michael earned approximately $375,000--$10,000 per month in
salary from Best Way, $1,500 per month in distributions from Northwest Hills, one-half of an IRS
refund check (approximately $27,000), and one-half of proceeds from a land transaction
(approximately $44,000). She contends that approximately $211,000 of this money was not
accounted for and remains undivided. Contrary to Danette's claim on appeal, the trial court
expressly found that "[Michael] did not conceal or otherwise fail to account for $1,000,000.00
(or any other amount) in community assets" and concluded that "[Danette]'s claim that
[Michael] concealed or failed to account for $1,000,000.00 in community assets is not supported by
credible evidence." Thus, as we perceive it, the real issue is not the trial court's failure to make a
fact-finding, but whether the trial court's finding is supported by the evidence.

 To account for the disposition of funds in the pre-divorce time period of 2006-2009,
Michael offered testimony from his bookkeeper, who provided accounting records and testimony
regarding his income and expenses during that time period. Danette apparently is no longer pursuing
a claim of concealment as to those periods of time. With regard to funds Michael acquired and
disposed of after Danette filed for divorce, he testified that (1) the $1,500 monthly payment from
Northwest Hills is used every month to pay off the loan from his father on Block 7, (2) Danette's half
of the IRS tax-refund check had already been disbursed to her, (3) Danette's half of the land
transactions had already been disbursed to her, except for a small check that she failed to collect
from the title company, (4) he paid $3,500 to $4,500 per month in spousal support to Danette, (5) he
paid $20,000 in attorneys' fees, and (e) he used the remaining funds for living expenses (including
a mortgage on the marital residence) and quarterly tax payments on his partnership income. 
Although he did not provide testimony as to his precise expenses in the post-filing time period, there
was evidence that he had monthly expenses of at least $8,000 and paid an unspecified amount of
quarterly tax payments. There is also evidence in the record of historical expenses in the pre-divorce
time period of 2006-2008, which showed approximate monthly house and insurance payments of
$1,850, property taxes of $6,500 per year, and "quarterly and taxes" of more than $100,000 per year
on average. In addition, Danette did not dispute that she had already received her half of the IRS
refund and land transaction proceeds. Based on the foregoing evidence, the trial court could
reasonably have concluded that Michael did not conceal any assets and that there were no
further community assets to be divided by the court. (14) We overrule Danette's third and fourth
appellate issues. (15)


CONCLUSION

 Having determined that the trial court erred in its calculation and division of what it
determined to be Danette and Michael's community-property estate, we reverse the portion of the
trial court's decree dividing the community estate and remand the cause to the trial court for a new
just and right division of the community estate.


 _________________________________________

 J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Rose and Goodwin

Reversed and Remanded

Filed: January 10, 2013
1. For clarity, we will identify appellant by her first name and appellee by his middle name,
by which he identifies himself.
2. At trial, several witnesses testified that the business started as a general partnership, which
was rolled into a limited liability corporation in 1994. The limited liability corporation was later
dissolved, but the general partnership remained intact. Although the partnership agreement specified
that the partners had equal ownership interests, Michael and his father testified that Michael held
only a 49% interest. Danette relied extensively on the original partnership agreement executed in
May 1992 as governing the terms of the partnership and, in particular, the extent of Michael's
ownership interest in the business.
3. For purposes of our analysis, we assume without deciding that the community, rather than
the partnership, discharged the debt on the construction loans.
4. The family code sections relevant to economic-contribution claims that were in effect at
the time the original divorce petition was filed have since been repealed but remain controlling for
purposes of this appeal.
5. The terms of the promissory note provided that "[t]he principal of this note is due and
payable in thirty-six (36) consecutive monthly installments" with "[t]he first installment [] due and
payable on or before November 15, 1989, and one installment [] due and payable on or before the
15th day of each succeeding month thereafter until fully paid . . . ." The final installment was due
on October 15, 1992. In calculating the community's economic-contribution claim, Danette's expert
did not include any increase in equity to the property resulting from payment of this note, and there
is no evidence that the note was amended or that Michael and his father were in default.
6. The miscellaneous improvements were specified as the "as-is" value of asphalt and
concrete paving, fencing, gates, signage, security camera system, landscaping, and sprinkler system.
7. Curiously, Danette's expert applied a 10% discount for lack of liquidity to Michael's
interest in Best Way Carpet even though it was undisputed that Michael is an equal owner in
that business and even though Best Way Carpet does not appear to be any more illiquid than
Northwest Hills.
8. In the memorandum ruling, the court stated that "the following community property is
awarded to Respondent [Michael] . . . All right, title and interest in and to the business known as
'Northwest Hills,'" which included "all of the community interest" in Blocks 1 and 7 of the
Milestone Planned Development Number One.
9. The court described the property being valued and awarded as follows:


 5. During the marriage, Petitioner and Respondent acquired the following
property other than by gift or inheritance with the values shown:


 . . . .


 Business known as "Northwest Hills," including but not limited to all furniture,
fixtures, machinery, equipment, inventory, cash, receivables, accounts, goods,
supplies, and all personal property used in connection with the operation of the
business, and also including all of the community interest in the lots in Block 1,
Replat of Milestone Planned Development Number One, and the lots in Block 7,
Replat of Milestone Planned Development Number One, Bell County, Texas, more
particularly described in Exhibit "A" to the Final Decree of Divorce signed on
December 20, 2011[.] [Valued at] $82,125.00.
10. In his calculations, Michael erroneously stated this figure as $307,000, which we use
because the trial court apparently did as well.
11. Notably, Danette did not include these lots in her inventory and proposed division of the
community estate. Her expert also did not include values for Lots 8 and 9 in his listing of the
parties' real property. Both, however, included separate values for Lot 4 and Best Way Carpet.
12. Michael contends that the trial court awarded Lots 8 and 9 to him in the final divorce
decree by virtue of the following language:


 WILLIAM MICHAEL PAPPAS, is awarded the following as his sole and separate
property . . . [T]he business known as Northwest Hills, including . . . all interest in
the lots in Block 1, Replat of Milestone Planned Development Number One, and in
the lots in Block 7 and Replat of Milestone Planned Development Number One . . .
more particularly described in Exhibit A . . . .


(Emphases added.) We do not believe the final decree can be so construed. Although Exhibit A
includes the legal description of Lots 8 and 9 in the Northwest Hills Commercial Subdivision, it
appears that Michael is either failing to recognize the decretal language limiting the award to the lots
in the Milestone Planned Development or is confused by the similarity in the names of the storage
business and the subdivision in which Lots 8 and 9 are situated.
13. At worst, the trial court offset the amount of wasted funds from the economic-contribution
claim Danette asserted against Michael's separate property interest in Block 8. The trial court
declined to recognize that claim, but in the alternative, found that it was accounted for in the division
of property. Because the trial court awarded the parties the nearly equal division of property they
requested, the court's alternative holding regarding the economic-contribution claim would make
sense only if the waste finding offset an economic-contribution claim, if one were found to exist. 
We have already determined that the trial court did not abuse its discretion in declining to recognize
the community's economic-contribution claim; accordingly, there is no apparent harm to Danette
arising from the finding that she wasted community assets.
14. Furthermore, Danette's claims of concealment are not supported by her pleadings, and a
judgment must conform to the pleadings. Tex. R. Civ. P. 301; Cunningham v. Parkdale Bank, 660
S.W.2d 810, 812 (Tex. 1983); Khalaf v. Williams, 814 S.W.2d 854, 858 (Tex. App.--Houston [1st
Dist.] 1991, no writ).
15. In her fifth issue, Danette asserts that the cumulative effect of the trial court's errors in
valuing property in the community estate resulted in a division of the marital estate that is so
disproportionate as to be manifestly unjust. Because we have sustained issue two, which will require
a remand for a new just and right division of the community estate, we need not address issue five. 
See Tex. R. App. P. 47.1.